**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

RAPHAEL GARRETT,

    Plaintiff,

v.                                                              Case No: 8:20-cv-1391-CEH-SPF

R.E. MICHEL COMPANY, LLC,

    Defendant.
_____/

**ORDER**

This matter comes before the Court upon Defendant's Motion for Summary Judgment [Doc. 17], Plaintiff's Amended Response in Opposition [Doc. 19], Defendant's Reply [Doc. 21], and the Statement of Agreed Material Facts [Doc. 28]. In its motion, Defendant presents various grounds for summary judgment on Plaintiff's claims for racial discrimination and retaliation. Having considered the motion and being fully advised in the premises, the Court will GRANT Defendant's Motion for Summary Judgment.

**I.   BACKGROUND AND FACTS**[1]

**Undisputed Material Facts**

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including the Statement of Agreed Material Facts [Doc. 28], Plaintiff's deposition [Doc. 17-2], the Declaration of Floating Manager Michael Muffett [Doc. 17-1], then Human Resources Director Sherry Atkinson [Doc. 17-6], and Regional Branch Manager Joseph Sita [Doc. 17-8].

Plaintiff, Raphael Garrett is a Black male. [Doc. 1-2 ¶ 9]. He was a truck driver for Defendant, R.E. Michel Company, LLC, between September 2017 and December 2019. [Doc. 28 ¶ 1]. R.E. Michel has multiple branches in Florida and its drivers deliver supplies from one location to another. [Doc. 17-1 at p. 2 ¶ 3]. R.E. Michel's drivers generally drive a similar route every day and are re-assigned routes as needs change.[2] [Doc. 28 ¶ 21]. The drivers are required to report to work at approximately 5:00 am each workday except Mondays. *Id.* ¶ 18. They are allowed to stop at restaurants or businesses near their route on their lunch break, and they can use their lunch break to do what they wish—so long as they do not spend longer than thirty (30) minutes. *Id.* ¶ 19. The only reasons to stop while on route are lunch, gas, or vehicle issues. [Doc. 17-1 at p. 5 ¶ 42].

Drivers are required to maintain their own daily written log of work hours and they must accurately record the time they arrive at work in the morning, the time they arrive at each warehouse, the time they leave each warehouse, their unpaid 30-minute lunch break, and the time they leave in the evening. [Doc. 28 ¶ 4]. They are required to turn in their daily log at the end of each day. [Doc. 17-1 at p. 2 ¶ 7]. Each truck has an electronic logging device ("ELD") which tracks the time the vehicle spends at rest and in motion, as well as its approximate location throughout the day.[3] [Doc. 28 ¶ 2; Doc. 17-1 at p. 2 ¶ 5]. R.E. Michel also requires drivers to personally perform a pre-

---

[2] The parties agree that R.E. Michel does not have a 'spare driver' position. [Doc. 28 ¶ 20].
[3] There is no dispute that the Department of Transportation requires ELD usage and accurate recordkeeping of ELD data. *Id.* ¶ 3.

2

trip inspection of their vehicles before leaving the warehouse on each trip, which includes checking that their trailer is secured and that they have the keys to it. [Doc. 28 ¶ 5].

On December 9, 2019, Plaintiff was supposed to drive from Orlando, Florida to the R.E. Michel branch in Jupiter, Florida, to make a delivery. *Id.* ¶ 6. He did not personally conduct a pre-trip inspection of his truck that morning. *Id.* ¶ 9. When he arrived at the branch in Jupiter, his trailer was locked and he did not have the pad lock keys. *Id.* ¶ 7. He was unable to complete the delivery that day. *Id.* ¶ 8.

On December 11, 2019, Plaintiff met with his supervisor, Wayne Nanan; Floating Manager, Michael Muffett; and Branch 312 Manager, Steve Queen[4] to discuss the failed delivery. *Id.* ¶ 10; Doc. 17-1 at p. 4 ¶ 27. During that meeting, concerns were raised that Plaintiff had taken an abnormally long time to reach the Jupiter branch and his handwritten records did not match his ELD data or the Jupiter branch's records. [Doc. 17-1 at p. 4 ¶ 31; Doc. 28 ¶ 11]. The next day, Plaintiff again met with Mr. Muffett and Mr. Queen.[5] [Doc. 28 ¶ 12]. During that meeting, Mr. Muffett showed Plaintiff that there were multiple instances where the ELD tracked his vehicle as being "on-duty" but "not driving," and where Plaintiff's handwritten driver's logs did not match his ELD records [Doc. 17-1 at p. 5 ¶¶ 34, 43]. Some of the

---

[4] Mr. Queen did not participate in the meeting but was present as a witness. [Doc. 17-1 at p. 4 ¶ 26].
[5] After the meeting the day before, Mr. Muffett reviewed the branch records, Plaintiff's driver logs, and the ELD records. [Doc. 17-1 at p. 5 ¶ 32]. The concerns were raised the previous day by Mr. Nanan. *Id.* at pp. 4-5 ¶ 5.

recorded stops were for two hours or more and were not reported on Plaintiff's daily logs of work hours that he turned in for pay. *Id.* ¶ 35; Doc. 17-6 at pp. 4-5 ¶¶ 23-24. However, Plaintiff denied falsifying his time sheets and said something must be wrong with the ELD. [Doc. 17-1 at p. 6 ¶¶ 44, 45]. Following the meeting, Mr. Muffett sent two emails to Defendant's Human Resources Director, providing an account of the meeting with Plaintiff.[6] *Id.* ¶ 46. Plaintiff was suspended pending further investigation and the involvement of the regional branch manager. [Doc. 28 ¶ 13; Doc. 17-1 at p. 6 ¶ 47].

The day after, December 13, 2019, Plaintiff lodged written complaints of racial discrimination and disparate treatment. [Doc. 28 ¶ 14]. This was the first time he had lodged such complaints. *Id.* On December 16, 2019, he sent a supplemental letter with additional allegations. *Id.* ¶ 15. Taken together, the two letters make four allegations: (1) two white employees had locked themselves out of their trucks but were not disciplined; (2) white employee Michael Rudd was not punished for stealing time by reporting to work at 5:00 am and waiting around on days he did not have a route assignment; (3) white employee William Casteel stole time by stopping at his home for lunch and was not punished; and (4) Mr. Casteel also stole time by getting a haircut while on-duty and was not punished. *Id.* ¶ 16.

---

[6] Defendant represents that Plaintiff explained that he would stop and "kill time" at rest areas or gas stations and that he would take extra time to make his deliveries so that he could "make his hours." [Doc. 17-1 at p. 5 ¶¶ 36, 38]. Plaintiff disputes this representation. [Doc. 17-2 at p. 91: l. 13 – l. 16). However, Plaintiff stated that if what he did was stealing time, then all the drivers stole time as they all stopped at truck stops and gas stations for extended periods of time. *Id.* at p. 73: l. 3 – l. 20.

4

Further review of Plaintiff's ELD records, written logs and the records from delivery sites revealed that for months Plaintiff had been falsely reporting hours he spent stopped as time worked. [Doc. 17-1 at p. 6 ¶ 48]. This means that he was paid for time he spent stopped and not driving. [Doc. 17-8 at p. 5 ¶ 25]. A review of ELD records and daily logs for all other Branch 192 drivers showed that no other driver stole time or was falsifying daily logs. [Doc. 17-1 at p. 7 ¶¶ 61-62]. It was also determined that the white drivers that locked themselves out of their trucks did not disrupt business to the extent Plaintiff had and they were able to complete their deliveries the same day. [Doc. 28 ¶ 17]. None of these drivers had forgotten to bring the keys with them. *Id.*

Around December 17, 2019, following a meeting of Mr. Muffett, Defendant's Executive Vice President Ronald Miller, Defendant's Human Resources Director Sherry Atkinson, and the Regional Branch Manager Joseph Sita, a decision was made to terminate Plaintiff's employment based on Plaintiff's submission of false time records.[7] [Doc. 17-6 at p. 5 ¶¶ 32-33, Doc. 17-8 at p. 5 ¶¶ 35-36]. Plaintiff was informed of the decision that same day. [Doc. 17-6 at p. 5 ¶ 34].

### The Lawsuit

On May 19, 2020, Plaintiff filed this action against Defendant in the Thirteenth Judicial Circuit in and for Hillsborough County, Florida. [Doc. 1-2; Doc. 1-1 at p. 3].

---

[7] Defendant represents that Plaintiff was also terminated based on Plaintiff's alleged admission to stealing time to make more money and admission that he could complete the route in three hours. As noted above, this is disputed by Plaintiff.

The action was then timely removed by Defendant. [Doc. 1]. The complaint asserts claims of race discrimination (**Count One**) and retaliation (**Count Two**) in violation of 42 U.S.C. § 1981. [Doc. 1-2]. Plaintiff, a Black male, alleges he was subjected to a racially disparate workplace environment repeatedly throughout the time in which he worked for Defendant, as he was habitually treated in a less favorable manner than non-Black employees because of his race. *Id.* ¶¶ 22-28. He also alleges that in good faith, he complained and objected in writing to Defendant's racially discriminatory treatment and behavior towards him and that Defendant retaliated against him by terminating his employment. *Id.* ¶¶ 43-49.

Defendant has moved for summary judgment as to both counts. [Doc. 17]. It asserts that there is no issue of material fact and that Plaintiff cannot establish the prima facie elements of his claims for disparate treatment and retaliation; it had a legitimate non-discriminatory reason for terminating Plaintiff—he was stealing time and submitting false records; and Plaintiff cannot establish that the reason for his termination was pretext. *Id.* at pp. 17-25. In his response, Plaintiff contends that his objective and subjective reasonable beliefs regarding disparate treatment were grounded in reason. [Doc. 19 at p. 3]. Plaintiff also contends that Defendant has drawn distinctions with the specific non-Black comparators, which raises issues of fact that courts are not permitted to decide on summary judgment. *Id.* at pp. 4, 6, 8. As to the retaliation claim, Plaintiff contends that Defendant has not carried its burden of showing that Plaintiff's suspension came with the intent to terminate Plaintiff, and that Plaintiff was immediately terminated following his letter of complaint regarding racial

6

discrimination. *Id.* at pp. 9-10. In reply, Defendant argues that Plaintiff's response does not include new facts or evidence, and that Plaintiff cannot establish the prima facie elements of his claims or rebut the legitimate reason for his termination. [Doc. 21 at pp. 1-7].

## II.  LEGAL STANDARD

Summary judgment is appropriate only when the court is satisfied that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law" after reviewing the "pleadings, the discovery and disclosure materials on file, and any affidavits[.]" Fed. R. Civ. P. 56(c)(2).  In determining whether a genuine issue of material fact exists, the Court must consider all the evidence in the light most favorable to the nonmoving party.  *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003). Issues of fact are "genuine only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986).  A fact is "material" if it may affect the outcome of the suit under governing law.  *Id.*

The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S.

at 325, 106 S. Ct. 2548. "Only when that burden has been met does the burden shift to the non-moving party." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

"[I]n order to survive summary judgment, the nonmoving party must set forth specific facts showing there is a genuine issue for trial." *Johnson v. New Destiny Christian Ctr. Church, Inc.*, No. 19-11070, 2020 WL 5289881, at *3 (11th Cir. Sept. 4, 2020) (citing *Anderson*, 477 U.S. at 249-50). "[U]nsupported 'conclusory allegations' do not suffice." *Middlebrooks v. Sacor Fin., Inc.*, 775 F. App'x 594, 596 (11th Cir. 2019). Likewise, "[a] 'mere existence of a scintilla of evidence' cannot suffice to create a genuine issue of material fact." *Johnson*, 2020 WL 5289881, at *3 (quoting *Anderson*, 477 U.S. at 252).

## III. DISCUSSION

Plaintiff has asserted that he was subjected to a racially disparate workplace and was retaliated against after he complained, in violation of § 1981. "§ 1981 ... has a specific function: It protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race." *Moore v. Grady Mem'l Hosp. Corp.*, 834 F.3d 1168, 1171 (11th Cir. 2016) (quoting *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474–75 (2006)).[8] The statute "prohibits not only racial discrimination but also retaliation against those who oppose it." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 355 (2013) (citing *CBOCS West, Inc. v.*

---

[8] The statute explains that "the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C.A. § 1981(b).

8

*Humphries*, 553 U.S. 442, 452–453 (2008)); *Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) ("Retaliation claims are also cognizable under 42 U.S.C. § 1981."). The test for unlawful discrimination and retaliation in violation of § 1981 is the same as the formulation used in Title VII discriminatory treatment cases. *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 472 (11th Cir. 1999) (addressing disparate treatment discrimination); *Gogel*, 967 F.3d at 1134 (addressing retaliation claims).

> Under that framework, if a plaintiff establishes a *prima facie* case of discrimination or retaliation, and the employer articulates a legitimate, non-discriminatory or non-retaliatory reason for its employment action, then the plaintiff must show the reason proffered by the defendant was not the true one, but was more likely a pretext for discrimination or retaliation.

*Wiggins v. Sec'y, Dep't of Army*, 520 F. App'x 799, 800 (11th Cir. 2013). "Although the intermediate burdens of production shift back and forth, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee remains at all times with the plaintiff." *Equal Employment Opportunity Comm'n v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1273 (11th Cir. 2002), *cert. denied*, 539 U.S. 941 (2003).[9] A plaintiff can survive a defendant's motion for summary

---

[9] The *McDonnell Douglas-Burdine* proof structure "was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983); *see also Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 594 (11th Cir.1987).  This framework of shifting burdens of proof is a valuable tool for analyzing evidence in cases involving alleged disparate treatment, but the ultimate question is whether the defendant intentionally discriminated against the plaintiff, which plaintiff must establish.

judgment if there is sufficient evidence to demonstrate the existence of a genuine issue of material fact regarding the truth of the employer's proffered reasons for its actions. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir.1997). A *prima facie* case along with sufficient evidence to reject the employer's explanation is all that is needed to permit a finding of intentional discrimination. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993); *Combs*, 106 F.3d at 1529

### The Prima Facie Case

The *prima facie* burden imposed on a plaintiff is to establish facts adequate to permit an inference of discrimination or retaliation. *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1222 (11th Cir. 2019) ("[A]t the *prima facie* stage the plaintiff must show a potential 'winner'—*i.e.*, enough to give rise to a valid inference that her employer engaged in unlawful intentional 'discrimination.' "); *see Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253-254 (1981). By establishing a *prima facie* case, the plaintiff creates a rebuttable presumption of discrimination or retaliation. *Corbin v. Southland Int'l Trucks*, 25 F.3d 1545, 1550 (11th Cir. 1994).

a. <u>Disparate Treatment</u>

To establish a prima facie case for disparate treatment in a race discrimination case, the plaintiff must show that: (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) his employer treated similarly situated employees outside of his protected class more favorably than he was treated; and (4)

he was qualified to do the job. *Burke-Fowler v. Orange Cty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006). Having reviewed the arguments and evidence presented, the Court agrees with Defendant that Plaintiff cannot establish a prima facie case as his comparators were not similarly situated. "[A] meaningful comparator analysis must be conducted at the *prima facie* stage of *McDonnell Douglas*'s burden-shifting framework." *Lewis*, 918 F.3d at 1218. "[A] plaintiff asserting an intentional-discrimination claim under *McDonnell Douglas* must demonstrate that [he] and [his] proffered comparators were 'similarly situated in all material respects.' " *Id.* The quantity and quality of the comparator's misconduct must be nearly identical. *Burke-Fowler*, 447 F.3d at 1323. In making the determination as to whether the employees are similarly situated, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways. *Silvera v. Orange Cty. Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001).

Here, the employees were not involved in the same or similar conduct. The undisputed evidence is that Plaintiff had been falsely reporting hours he spent stopped as time worked. None of the other drivers had falsified their daily logs. [Docs. 17-1 ¶¶ 31-34, 48, 60-63, 69; Doc. 17-6 ¶¶ 23-25, 31; Doc. 17-8 ¶ 34, 52]. Contrary to Plaintiff's claim, the evidence indicates that Plaintiff's coworker Michael Rudd did not steal time by arriving to work at 5:00 am because all drivers were required to report to work at that time every day except on Mondays. [Doc. 17-1 ¶ 62]. That coworker also did not steal time by eating or sitting in the breakroom after arriving at 5:00 am as all the drivers often got breakfast from nearby restaurants while waiting for their trucks to be

loaded. *Id.* ¶ 63. Plaintiff's conduct is also dissimilar to that of his comparator William Casteel, who stopped at his house during lunchtime and who once got a haircut during his lunch break, because that comparator did so during his unpaid, off-the-clock lunch break. [Doc. 17-1 ¶¶ 66-68; Doc. 17-6 ¶¶ 43-45; Doc. 17-8 ¶¶ 45-48]. Additionally, Plaintiff's coworkers, William Casteel and Randy Dykes, did not forget their keys when making deliveries, but rather they locked their keys inside their trucks, which did not disrupt business. They were able to complete their deliveries that day. [Doc. 17-1 ¶¶ 50-59]. Plaintiff was unable to complete his delivery on December 9, 2019 because he could not open his trailer, as he had left the keys to the pad lock at his home. [Doc. 17-1 ¶¶ 27-29]. Further, Plaintiff has provided no evidence that his other coworkers were treated more favorably.[10] [Doc. 17-1 ¶¶ 60-61]. Hence, he cannot establish a prima facie case that he was subject to disparate treatment.

b. Retaliation

"To establish a claim of retaliation under ... [§] 1981, a plaintiff must prove that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events." *Moore*, 834 F.3d at 1176 (quoting *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008)). Defendant makes an argument only as to whether Plaintiff engaged in protected

---

[10] Notably, the record contains conclusory testimony from Defendant that the other African-American drivers engaged in like conduct and were still working for Defendant. [Doc. 17-2 at p. 73: l. 16 – p. 74: l. 5]. Defendant's records contradict Plaintiff's self-serving testimony.

activity, arguing that Plaintiff could not have had a good faith belief that he was a victim of racial discrimination. [Doc. 17 at pp. 21-23]. The Court disagrees.

"The phrase 'protected activity' includes formal EEOC complaints and informal complaints filed internally to the employee's supervisors." *Jones v. City of Lakeland*, 318 F. App'x 730, 736 (11th Cir. 2008) (citing *Shannon v. Bellsouth Telecomms., Inc.,* 292 F.3d 712, 716 n. 2 (11th Cir.2002)). "A plaintiff engages in 'statutorily protected activity' when he or she protests an employer's conduct which is actually lawful, so long as he or she demonstrates 'a good faith, reasonable belief that the employer was engaged in unlawful employment practices.' " *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998) (quoting *Little v. United Technologies, Carrier Transicold Division,* 103 F.3d 956, 960 (11th Cir.1997)). "It is insufficient for a plaintiff 'to allege his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.' " *Id.* For example, in *Knox v. Roper Pump Co.*, 957 F.3d 1237, 1240 (11th Cir. 2020), the plaintiff was suspended—initially with pay—for violating the company's workplace violence policy. Shortly after, he called the company's Ethics and Compliance Employee Hotline and complained that he was being treated more harshly on account of race than two white employees who had gotten into a physical altercation at work, and were allowed to continue working, whereas he was not afforded that opportunity. *Id.* at 1240, 1241. The court found that plaintiff's complaint of racial discrimination was protected activity. *Id.* at 1245.

The purported protected activity in this case is Plaintiff's lodging of complaints of racial discrimination. [Doc. 1-2 ¶¶ 43-49; Doc. 28 ¶¶ 14-16]. The two complaints were provided as exhibits to the declaration of Defendant's Human Resources Director. [Doc. 176 at pp. 48, 50]. In his first complaint, dated December 13, 2019, Plaintiff complained about the "increasingly discriminatory, hostile, and intimidating work environment" and alleged that he was treated differently from his white coworkers. *Id.* at p. 48. He also threatened to file a complaint with the Equal Employment Opportunity Commission. *Id.* He supplemented his complaint on December 16, 2019, to further demonstrate the racial discrimination he experienced. *Id.* at p. 50. These allegations amply support the objective reasonableness of Plaintiff's belief that he was being treated less fairly than his white coworkers and that he was suspended because of his race. Plaintiff's complaint of discrimination here is similar to that of the plaintiff in *Knox*, which the court found was protected activity. *See also Felder v. Bradford Health Servs.*, 493 F. App'x 17, 21 (11th Cir. 2012) (holding that plaintiff's complaint to an employee in Human Resources about discrimination constituted protected activity); *Hankins v. AirTran Airways, Inc.*, 237 F. App'x 513, 519 (11th Cir. 2007) ("Hankins engaged in a protected activity by stating to her superior, Allison Head, Hankins' belief that Durham was discriminating against her on the basis of race."). The evidence before the Court establishes a prima facie case of retaliation by Defendant.[11]

---

[11] It is undisputed that Plaintiff suffered a materially adverse action. He was terminated from his employment. "Termination is a materially adverse action." *Jefferson v. Sewon Am., Inc.*, 891

## Legitimate Non-Discriminatory Reason

Although the evidence makes out a prima facie case of retaliation, both claims still fail because it is unrefuted that Plaintiff was terminated for a legitimate non-discriminatory reason. "A legitimate, non-discriminatory reason is one that might motivate a reasonable employer." *Loberger v. Del-Jen, Inc.*, 616 F. App'x 922, 926 (11th Cir. 2015) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000)). Defendant has provided undisputed evidence that it terminated Plaintiff's employment because Plaintiff submitted false timesheets for months. [Doc. 17-6 ¶¶ 31-33; Doc. 17-8 ¶¶ 34-36]. In *Simpson v. Fla. Dep't of Corr.*, 134 F. App'x 303, 305 (11th Cir. 2005), the court noted that Plaintiff's submission of false time sheets was a legitimate nondiscriminatory reason for Plaintiff's termination. Likewise, in *Nichols v. Volunteers of Am., N. Alabama, Inc.*, 470 F. App'x 757, 762 (11th Cir. 2012), the Court noted that Plaintiff's altering of her time sheets was a nondiscriminatory reason for her demotion. *See also E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000) (finding that Defendant's good faith belief that the employee lied in an internal investigation

---

F.3d 911, 924 (11th Cir. 2018). Additionally, Plaintiff was terminated within four days of lodging his complaint to the director of human resources. The close proximity of the two events establishes the requisite causation. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ("The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action."); *McCann v. Tillman*, 526 F.3d 1370, 1376 (11th Cir. 2008) ("[T]he five days between McCann's grievance and Bounds' overtime memorandum satisfies the 'close temporal proximity' test of the causation element."); *Marria v. C.R. England, Inc.*, 679 F. App'x 844, 849 (11th Cir. 2017) (seven days between two events satisfied casual element).

offered a legitimate nondiscriminatory reason for the employee's termination); *Wineberger v. RaceTrac Petroleum, Inc.*, 672 F. App'x 914, 919 (11th Cir. 2016) (finding that RaceTrac's reasonable belief that the employee stole candy was a legitimate, nondiscriminatory reason for terminating her employment). Here, Defendant has established a legitimate non-discriminatory reason for Plaintiff's termination.

### Pretext

Moreover, there is no evidence that the reason for Plaintiff's termination was pretext. "A reason is not pretext for discrimination 'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.' " *Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). "The inquiry into pretext requires the court to determine, in view of all the evidence, 'whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct.' " *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008) (*Combs v. Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir.1997)). Here, Plaintiff has merely offered argument that there are factual disputes regarding the truly motivating factor behind Defendant's decision, that Plaintiff would have been fired long before he filed his complaint if he was the employee Defendant represents him to be during the time of his employment, and that any employer may be able to point to a bevy of reasons as to why a termination could otherwise be justified. [Doc. 19 at pp. 7-8]. This is not

enough. *See Siudock v. Volusia Cty. Sch. Bd.*, 568 F. App'x 659, 664 (11th Cir. 2014) ("Siudock presents no evidence , other than his own unsupported belief, that these reasons were pretextual. Thus, the district court properly granted summary judgment on his retaliation claims."). As the Court has explained, the ultimate burden of persuasion remains at all times with the plaintiff. *Joe's Stone Crabs, Inc.*, 296 F.3d at 1273. Plaintiff has presented no evidence disputing the fact that he submitted false time sheets and establishing that his termination was based on his race.

Plaintiff has failed to establish that Defendant intentionally discriminated against him. As no genuine issues of material fact exist, Defendant is entitled to judgment in its favor as a matter of law. Accordingly, it is

**ORDERED**:

1. Defendant's Motion for Summary Judgment [Doc. 17] is GRANTED.
2. The Clerk is directed to enter judgment in favor of Defendant, R.E. Michel Company, LLC and against Plaintiff Raphael Garrett.
3. The Clerk is further directed to terminate all deadlines and pending motions as moot and to close this case.

**DONE AND ORDERED** in Tampa, Florida on November 24, 2021.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any